IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES LEVOY WATERS,
    Petitioner,

vs.                                   Case No.:  3:13cv358/LAC/EMT

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition, filed under 28 U.S.C. § 2254 (doc. 8).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 34).  Petitioner responded in opposition to the motion (doc. 40).  He also filed a "Motion to Order the Respondent to Supplement the Initially Filed Record with the Full Trial Record" and a Motion to Expand the Record (docs. 41, 42).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is established by the state court record (doc. 34).[1] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2005-CF-

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (doc. 34) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates stamp" page number.

4251, with one count of lewd or lascivious battery (Count 1), one count of solicitation to commit lewd or lascivious battery (Count 2), and one count of conspiracy to commit lewd or lascivious battery (Count 3) (Ex. B). Petitioner proceeded to trial by jury, and at the conclusion of the State's case, the court granted Petitioner's motion for judgment of acquittal as to Counts 1 and 3 (*see* Ex. D). The jury found him guilty as charged on Count 2 (Ex. C). On May 17, 2006, the court adjudicated Petitioner guilty and sentenced him to five years of imprisonment, to run consecutively to any active sentence he was then serving (Ex. D). Petitioner received pre-sentence jail credit of 288 days (*id.*).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-2741 (Ex. E). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. F). Petitioner filed a pro se initial brief (Ex. G). The First DCA affirmed the judgment per curiam without written opinion on November 25, 2008, with the mandate issuing December 30, 2008 (Exs. I, J). Waters v. State, 995 So. 2d 960 (Fla. 1st DCA 2008) (Table).

On March 4, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-1108, alleging ineffective assistance of appellate counsel (Ex. K). The First DCA denied the petition on April 16, 2009 (Ex. M). Waters v. State, 18 So. 3d 1042 (Fla. 1st DCA 2009) (Table).

On June 2, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–22). He subsequently filed an amended motion and a supplement (*id.* at 25–35, 39–41). On September 18, 2009, the state circuit court summarily denied the motion (*id.* at 43–57). Petitioner appealed the decision to the First DCA, Case No. 1D11-1395 (Ex. O). The First DCA per curiam affirmed without written opinion on August 31, 2011, with the mandate issuing November 1, 2011 (Exs. Q, T). Waters v. State, 72 So. 3d 754 (Fla. 1st DCA 2011) (Table). On November 18, 2011, Petitioner filed a motion to recall the mandate (Ex. U). The First DCA denied the motion on December 15, 2011 (Ex. V).

On May 28, 2012, Petitioner filed a second Rule 3.850 motion (Ex. W at 1–16). The state circuit court denied the motion as untimely and successive on July 9, 2012 (*id.* at 17–28). Petitioner appealed the decision to the First DCA, Case No. 1D12-4435 (Ex. X). The First DCA per curiam affirmed without written opinion on December 4, 2012, with the mandate issuing January 2 , 2013

(Exs. Z, AA). <u>Waters v. State</u>, 103 So. 3d 153 (Fla. 1st DCA 2012) (Table). The First DCA denied Petitioner's motion for rehearing on January 30, 2013 (Ex. CC).

Petitioner filed the instant habeas action on June 9, 2013 (*see* doc. 1).

II. ANALYSIS

Respondent filed a motion to dismiss the petition as untimely (doc. 34). A one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). Petitioner concedes that his § 2254 petition is untimely, and that he is not entitled to equitable tolling of the federal limitations period (doc. 40 at 1).[2] However, he contends he is entitled to review of his federal petition through the "actual innocence" gateway (*see id.*).

In <u>McQuiggin v. Perkins</u>, — U.S. —, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. 133 S. Ct. at 1928. The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of [ ] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing <u>House v. Bell</u>, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)). In <u>McQuiggin</u>, the Court stressed that the <u>Schlup</u> standard is demanding, and a petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims only if he presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting <u>Schlup</u>, 513 U.S. at 316).

---

[2] Despite Petitioner's concession, the undersigned has reviewed the state court record and confirmed that the § 2254 petition is untimely. The fact that over one year elapsed between the date the First DCA denied Petitioner's motion to recall the mandate in the first Rule 3.850 appeal, on December 15, 2011, and the date Petitioner filed his § 2254 petition, on June 9, 2013, demonstrates that the petition is untimely. Petitioner's second Rule 3.850 motion did not toll the running of the federal limitations period during that time, because the state court's final disposition of that motion was based upon the determination that it was untimely as well as successive. An untimely post-conviction application is not "properly filed" and thus does not qualify for statutory tolling under § 2244(d)(2). *See* <u>Pace v. DeGuglielmo</u>, 544 U.S. 408, 414, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

Case No.: 3:13cv358/LAC/EMT

In the instant case, Petitioner alleges the State's case centered around the testimony of his wife, Patricia Waters (doc. 40 at 3). He alleges she testified that Petitioner called her on the telephone in December of 2004, and requested that she have sex with her 15-year-old son, Nicholas, while Petitioner listened (*id.*). Petitioner alleges that during cross-examination, his wife was asked if she had denied that this occurred when she spoke with Lisa Robinson, an employee of the state child protective services agency, and when she spoke with Mike Woods, a law enforcement officer, on two different occasions (*id.*). Petitioner alleges his wife admitted that she had lied to Robinson and Woods, and she testified that she lied because she was scared (*id.*). Petitioner alleges his wife was asked whether she had also denied the allegations to Robert Gryskewicz, an employee of the Families First Network, and she admitted that she had denied the allegations to Mr. Gryskiewicz, but again testified that she lied because she was scared (*id.* at 3–4).

Petitioner alleges the telephone call between he and his wife was audio recorded (Petitioner was incarcerated at the time of the phone call), and the audio recording was played at trial (doc. 40 at 3). He alleges the trial judge described the telephone call as "beating around the bush" as opposed to being specific (*id.*).

Petitioner alleges Nicholas testified that on the day in question, he was in the living room when his mother told him that Petitioner wanted to talk to him (doc. 40 at 3). Nicholas testified that his mother told him what Petitioner wanted him to do, and it was sexual in nature, but he could not remember exactly what it was that his mother told him Petitioner wanted him to do (*id.*). Petitioner alleges that on cross-examination, Nicholas admitted that he had an argument with Petitioner on the telephone that day, but it was because of the way he was talking to Petitioner, not because he refused to have sex with his mother (*id.*). Petitioner alleges a videotape was played during trial, after which Nicholas admitted that his mother never asked him about oral sex (*id.*).

Petitioner alleges that the testimony of Lisa Robinson and Robert Gryskiewicz, as well as a report written by Gryskiewicz, would have impeached Patricia Waters's testimony that the reason she lied to them was because of fear (doc. 40 at 4). He alleges Lisa Robinson would have testified that she spoke with Mrs. Waters on January 19, 2005, and January 21, 2005, and Waters "denied the allegations" (*id.*). Petitioner alleges Lisa Robinson also would have testified that she suggested to Mrs. Waters that she and Nicholas enter a domestic violence program, but Waters "indicated that she

didn't know about leaving yet" (*id.*). Petitioner alleges Robinson would have further testified that she temporarily removed Nicholas from Mrs. Waters's custody on January 26, 2005, because Waters "wouldn't do the right thing" (*id.*). Petitioner alleges if the jury had heard testimony from Lisa Robinson and Robert Gryskiewicz, and seen Gryskiewicz's report, no reasonable juror would have found him guilty (*id.*).[3]

The court will assume (but certainly does not decide) that Petitioner's description of the evidence presented at trial is accurate, that Lisa Robinson and Robert Gryskiewicz were available to testify and would have testified as Petitioner suggests, that Mr. Gryskiewicz would have testified consistently with his report, and that their testimony and his report would have been admissible.[4] Even making these assumptions, the "new evidence" is insufficient to persuade the court that, in light of the new evidence, no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt. As Petitioner concedes, Patricia Waters admitted at Petitioner's trial that she told Robinson and Gryskiewicz that the allegations regarding the underlying offense conduct were false. Therefore, additional testimony on this point would have been cumulative.

Further, the "new evidence" has little, if any, impeachment value. Testimony that Ms. Waters "indicated [to Lisa Robinson] that she didn't know about leaving <u>yet</u>" (emphasis added) after Robinson suggested that Waters and her son enter a domestic violence program in late January of 2005, has little tendency to prove that Ms. Waters was not afraid when she spoke to Robinson. Further, Robert Gryskiewicz's report indicates that when he met with Ms. Waters, in early February of 2005, she stated her willingness to do whatever the state dependency court and child protective services agencies asked her to do, which included Gryskiewicz's referring her to a domestic violence program for a domestic violence assessment and Waters's following any recommendations resulting from the assessment (*see* doc. 42 at 5).

Petitioner's "new evidence" falls far short of making a colorable showing of his factual innocence of solicitation to commit lewd or lascivious battery upon a child. Therefore, he failed to demonstrate he is entitled to review of his federal habeas claims through the "actual innocence" or

---

[3] Mr. Gryskiewicz's report is the subject of Petitioner's motion to expand the record (doc. 42, attachment).

[4] In light of these assumptions, Petitioner's motion to expand the record will be granted, but his motion to supplement the record with the trial transcript will be denied as unnecessary.

Case No.: 3:13cv358/LAC/EMT

"fundamental miscarriage of justice" gateway.  *See* Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2002).

III.  CONCLUSION

Petitioner's Section 2254 petition was filed after the federal limitations period expired.  He has failed to demonstrate that he is entitled to review of his claims through the "actual innocence" gateway.  Therefore, his federal habeas petition should be dismissed with prejudice as time-barred.

IV.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

1. Petitioner's Motion to Expand the Record (doc. 42) is **GRANTED**.

2. Petitioner's "Motion to Order the Respondent to Supplement the Initially Filed Record with the Full Trial Record" (doc. 41) is **DENIED**.

And it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (doc. 34) be **GRANTED**.

2. That the Amended Petition (doc. 8) be **DISMISSED** with prejudice as untimely.

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 2nd day of March 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).